EBERLIN & EBERLIN, P. C., et al., Appellants, v COUNTY OF PUTNAM et al., Respondents.

Second Department, July 6, 1981

APPEARANCES OF COUNSEL

*Sperry, Weinberg, Wels, Waldman & Rubenstein (Richard H. Wels* and *Allan H. Carlin* of counsel), for appellants.

*Keegan, Keegan, Hecker & Tully, P. C. (Andrew W. Tully, Jr.,* of counsel), for respondents.

OPINION OF THE COURT

*Per Curiam.*

Petitioners commenced this proceeding to recover the

sum of $26,000, allegedly the balance due on an agreement pursuant to which petitioners organized and planned a solid waste facility—a resource recovery center and land-fill operation. The petitioners' involvement in the project grew out of discussions, in February, 1975, among petitioner Stephen A. Estrin, who was then employed as a planning consultant of the County of Putnam; Frank Barbarita, the county's Civil Defense Director; and Thomas Bergin, a member of the County Board of Supervisors. Bergin explained that the project was required because the State Department of Environmental Conservation (DEC) had ordered the county to shut its dump by March 31, 1975. Estrin indicated that he—along with two licensed professional engineers (whose firms are also petitioners herein) organized in a consortium—would perform the work for the sum of $65,000. The figure was based on the petitioners' estimate of the value of their work, and was not grounded on a specific estimate of the time or materials necessary for completion of the project. Bergin, ostensibly acting on behalf of the Board of Supervisors, agreed, and urged Estrin to proceed.

The joint venture drew up the plans and presented them to DEC on March 24, 1975. The following day, the petitioners prepared a voucher requesting payment in the amount of $65,000, and submitted it to the Board of Supervisors. The board passed a unanimous resolution declaring that an emergency existed with respect "to handling of solid waste matter in the County of Putnam" and, by a further resolution, resolved that the county enter into an agreement "with the engineering firm of a consortium of Eberlin & Eberlin for the completion of the necessary engineering documents and * * * test borings to comply with the D.E.C. requirements for approval to operate and construct a Solid Waste Management Facility, for Putnam County, for a period of 90 days, and also with intent to enter into negotiations for design of Phase II * * * to commence operation April 1st, 1975 at a sum not to exceed $65,000.00." On or about March 27, 1975, the DEC granted the facility a temporary (90-day) approval.

No payment was received by petitioners pursuant to the March 25, 1975 resolution. However, a further resolution,

dated April 25, 1975, authorized the County Treasurer "to transfer the sum of $39,000.00 from the * * * Account Provisions for Capital Projects into * * * [the] Sanitary Landfill and Resource Recovery Program and * * * RE-SOLVED that the sum of $39,000.00 be paid to Eberlin-Eder-Estrin (which is a consortium of Eberlin & Eberlin). The sum of $39,000.00 being 60% of the original voucher submitted in the amount of $65,000.00."

On May 30, 1975 petitioners submitted a voucher for the payment of the balance of $26,000. Some time thereafter, at the request of the clerk of the Board of Supervisors, Estrin submitted a three-page breakdown of the work performed. The breakdown indicated that the professionals involved in the project had worked a total of 1,806 hours on the project. Billing at a rate of $12 per hour, multiplied by a factor of three as compensation for overhead, Estrin's breakdown indicated that the value of the work performed was $65,000. On December 2, the board, by a 4 to 1 vote, "RESOLVED that the balance due Stephen A. Estrin, Inc., from the [$65,000] bill be paid at this time subject to the Court Order filed against paying any bills with respect to the proposed resource recovery water and sanitary landfill operation." The order staying payment was lifted, but Estrin was not paid. The County Treasurer took the position that he lacked authority to pay petitioners additional moneys, since the board had not authorized payment of a specific amount and the petitioners' claim had not been audited.

After further requests for payment by Estrin to the board, the board resolved, on May 4, 1976, to hire an engineer to "review and audit Mr. Estrin's bill of $65,000.00 for plans and specifications for the Putnam County Resource Recovery submitted in March of 1975." Later that month, petitioners commenced the instant proceeding, seeking to compel the respondents to pay the sum of $26,000 allegedly due them. In their answer, respondents invoked several defenses and, as a counterclaim, sought recovery of the $39,000 which they had already paid. They alleged that the petitioners constituted an illegal joint venture and that the work was not performed by licensed professional en-

gineers as required by subdivision 3 of section 7209 of the Education Law.

Following a trial, the court ruled that the agreement was void since Estrin, as county planning consultant, was prohibited from having any interest in the contract (see General Municipal Law, § 801). In addition, it held that the joint venture was illegal because Estrin, a member of the venture, was not a licensed professional engineer (see Education Law, § 7209, subd 4). The court found that because the entire transaction was illegal, petitioners were not entitled to receive any payment for the work performed and were, moreover, obligated to return the $39,000 which they had previously received.

Initially, we note our disagreement with the trial court's finding that Estrin possessed a prohibited interest in the contract, under section 801 of the General Municipal Law. There is nothing on the record which would suggest that Estrin, as a county planning consultant, had authority to negotiate, prepare, authorize, or approve contracts, or otherwise possessed powers which would bring him within the ambit of section 801 (see *Landau v Percacciolo*, 50 NY2d 430). We agree, however, with the court's conclusion that petitioners may not compel payment of the $26,000 allegedly due.

The legal authorization for the project was provided by the Board of Supervisors resolution of March 25, 1975. By this resolution, the board ratified Bergin's action in selecting petitioners for the project. In addition, the resolution declared that an emergency existed, thus providing the legal basis for the project to proceed in the absence of competitive bidding (see General Municipal Law, § 103). However, neither the March 25, 1975, nor the subsequent resolutions of the board, specified that petitioners were to receive $65,000 for their work. The March 25 resolution provided only that the cost of the project was "not to exceed $65,000.00."

The April 25, 1975 resolution, while authorizing payment of $39,000, or 60% of $65,000, made no mention of when, if at all, further payments were to be made to petitioners. Finally, the December 2, 1975 resolution, which

contemplated a payment of the "balance due" petitioners from the $65,000, contained no direct authorization to pay a specific dollar amount.

In the absence of a legally binding contract for the payment of a fixed sum of money, the petitioners could obtain additional compensation for the work performed only through compliance with the claims procedures of section 369 of the County Law. That section provides that claims against a county must be written, itemized, and certified, and may not be paid, except in situations not here applicable, unless they have been audited. It is for the Board of Supervisors to make the necessary factual determinations (*People v Sutherland*, 207 NY 22, 27), and to fix the reasonable value of the work performed on behalf of the county (see, e.g., 11 Opns St Comp, 1955, p 436).

As had been previously noted, Estrin, acting on behalf of the petitioners, did submit an itemized claim, including an hourly breakdown of the work performed. The Board of Supervisors, in its resolution of May 4, 1976, indicated that it was prepared to audit the claim. The procedure was apparently cut short, however, when the petitioners instituted the instant proceeding.

In the circumstances, we believe that the petition should be dismissed, so that the statutorily mandated auditing procedures may be completed. There is no basis for judicial intervention at this juncture. Insofar as the Board of Supervisors has not refused to perform its legal duties, petitioners are not entitled to relief in the nature of mandamus. Should the petitioners be aggrieved by the ultimate determination of the board, they will be able to seek review in an article 78 proceeding in the nature of certiorari (see *New York Catholic Protectory v Rockland County*, 212 NY 311).

Finally, we hold that the respondents' counterclaim for the $39,000 previously paid petitioners should have been dismissed. The counterclaim rests, in essence, on the respondents' claim that the joint venture was illegal under subdivision 4 of section 7209 of the Education Law. It is, of course, true that Estrin was not an engineer, land surveyor, architect, or landscape architect, and that he therefore was not authorized to form a joint venture with the

other petitioners, who are engineers. However, the fact that the petitioners did not constitute a lawful joint enterprise would not operate to vitiate the contract. In this regard, subdivision 4 of section 7209 must be contrasted with subdivision 3 of that section, which specifically prohibits municipalities from entering into certain contracts unless the work is supervised by a professional engineer or architect. There is no indication that subdivision 3 was violated in the case at bar.

HOPKINS, J. P., RABIN, GULOTTA and THOMPSON, JJ., concur.

Judgment of the Supreme Court, dated September 19, 1979 and entered in Putnam County, reversed, on the law, without costs or disbursements, proceeding dismissed and counterclaim dismissed, without prejudice to a further proceeding by petitioners in accordance with the opinion herein.